Burke, J. (dissenting in part).
Although I agree that there should be a reversal, I cannot accept the conclusion that the matter should be remitted for further proceedings. Even in terms of the majority’s limited due process ground, the statutory scheme is itself unconstitutional and should be struck down. The majority agrees that the appellants ’ lack of access to the minutes of the Grand Jury proceedings prior to filing their answers to the report and/or their appeals from the acceptance of the report constitutes a denial of due process. The court below denied their motions to inspect the minutes upon the ground that it lacked the power to grant the motions and, in this conclusion, the court below was clearly correct, as a reading of the statute indicates. The statute itself specifically provides that the record of the proceedings had pursuant to section 253-a of the Code of Criminal Procedure shall remain sealed and that, in the event of an appeal to the Appellate Division from the order accepting the report, the “ separately sealed ” minutes of the proceedings shall be furnished to the Appellate Division (Code Crim. Pro., § 517-a, subds. 5, 6). It is therefore clear that the deprivation of due process flows directly and explicitly from the statute itself. However, today’s decision avoids a declaration that the statute is unconstitutional on this ground and proceeds to revise the statute (actually, to repeal certain rather explicit portions of it) to provide for that which the Legislature has explicitly denied. The statute is now to be read as providing that the minutes are to be sealed and remain secret unless either of two vague and amorphous conditions are met. Thus, if the Grand Jury minutes contain ‘ ‘ matter that must needs be kept confidential ”, the report must be rejected and sealed by the court. It *207 should be noted first of all that grand jury proceedings, by their very nature, are intended tole confidential (see Code Grim. Pro., § 258) so that the condition will apparently always be met. Furthermore, we are not here faced with a situation in which the Legislature has failed to deal with a particular matter so that a vacuum exists which the courts might reasonably act to fill. In dealing with the question whether there might be situations in which the report itself should remain secret, the Legislature included only the situation in which the report might prejudice pending criminal matters and, even in that case, provided only for its temporary suppression during the pendency of the criminal matter. It is, therefore, clear that a strained effort is unnecessarily being undertaken to rewrite legislation which is plain and unequivocal on its face in denying the right today found required by the demands of procedural due process so as to render it constitutional. It is a fundamental element of our system of separation of governmental powers that only the Legislature enacts, amends or repeals legislation and that it is no part of the constitutional function of the courts to undertake to perform that task for the Legislature, however well intentioned such judicial interference may be. In the present instance, the Legislature has decided that persons such as appellants, when subject to the process embodied in section 253-a of the Code of Criminal Procedure, shall not be afforded the opportunity to inspect the grand jury minutes. This court today holds that that decision denies the appellants due process of law, and properly so. The result of that holding should be a declaration that the statute is to that extent unconstitutional and not a legislative determination in the form of an opinion that the statute should be repealed pro tanto and re-enacted to provide what the Legislature had intentionally denied. Given such a declaration of unconstitutionality the legislative process could undertake a thorough and careful re-examination of the statute and make a determination whether such inspection should be allowed and, if so, upon what clearly specified conditions. On the other hand, the re-examination might well result in the conclusion that grand jury secrecy is of greater value than grand jury reports and that, as a result, the entire reporting process should be scrapped rather than have it subjected to the procedural rights required by due process. In any case, the judg *208 ment to be made as to such questions is unquestionably one for the Legislature and today’s decision usurps that function.
In addition, the statutory scheme must be deemed violative of the provisions of our own State Constitution, specifically section 6 of article I, and section 1 of article III.
Section 6 of article I, of our Constitution provides, in pertinent part, that “ [t]he power of grand juries to inquire into the wilful misconduct in office of public officers, and to find indictments or direct the filing of- informations in connection with such inquiries, shall never be suspended or impaired by law.” Section 1 of article III of the Constitution provides that “ [t]he legislative power of this state shall be vested in the senate and assembly.” The statute purporting to authorize grand juries to issue ‘ ‘ reports ” as to noncriminal misconduct violates both of these provisions. By its terms, section 6 of article I guarantees that the power of the grand jury to inquire into misconduct by public officers may not be suspended or impaired by law. It is clear that this provision cannot reasonably be read as conferring a power to report in instances where the grand jury’s investigation develops evidence which is insufficient to warrant finding an indictment. The provision’s very structure, however, indicates that its power to inquire is inseparably linked to its power to find indictments or to direct the filing of informations “ m connection with such inquiries ”. (See Matter of Wood v. Hughes, 9 N Y 2d 144, 150-151.) The provision was added to the Constitution at the 1938 Constitutional Convention and its introduction was accompanied by floor debate which uniformly referred to the inquiry power in relation to the power to find indictments. (See Revised Record of Constitutional Convention of 1938, vol. 3, pp. 2570-2573; 1938 Constitutional Convention Committee, Yol. IX, Problems Relating to Judicial Admininstration and Organization, pp. 850, 860-865.) In addition, it is significant that, at the same time that this provision was added, the term “presentment” was deleted from the section. As the opinion in Matter of Wood v. Hughes {supra) indicates, the term is properly applied to an accusation of crime made at the grand jury’s own instance, as opposed to the indictment which is also an accusation, but one which is made at the instance of the prosecuting authority (9 X Y 2d at 148, n. 1). However, old case law had used the *209 term to describe the result of a grand jury investigation where the evidence was insufficient to support an indictment, i.e., a ‘ ‘ report ’ ’ making recommendations for remedial action. (Matter of Jones v. People, 101 App. Div. 55, and oases cited in Matter of Wood v. Hughes, supra, at 148, n. 2.) This use of the term was thus established at the time of the 1938 Convention and the deletion of the term from section 6 of article I thus tends to reinforce the conclusion that there is no constitutional sanction for this reporting function of the grand jury. It, therefore, seems reasonable to conclude that that constitutional provision was intended both to guarantee against legislative interference with the power of the grand jury to inquire into misconduct by public officers and to limit that power to the ordinary situation of finding indictments or refusing to do so. Therefore, such reports, aptly described as ‘ ‘ legally unauthorized and morally obnoxious ” (Matter of Wood v. Hughes, supra, at p. 155), are also constitutionally impermissible as in excess of the power of the grand jury.
Section 1 of article III of the Constitution prohibits the delegation of legislative powers to other bodies or persons. It is nevertheless clear, and our cases have so held, that certain legislative powers may be “ delegated ” by the Legislature to various administrative and other bodies as long as the delegation is subject to legislative “ standards ” for its implementation (Packer Collegiate Inst. v. University of State of N. Y., 298 N. Y. 184; Matter of City of Utica v. Water Pollution Control Bd., 5 N Y 2d 164). And, as the City of Utica case demonstrates, there are instances where, because of the nature and complexity of the administrative problem, the legislative standards may be broad and lacking in specifics, with the details of the legislative scheme left to be “ filled in ” by the delegate body (Matter of City of Utica v. Water Pollution Control Bd., supra, at p. 169). Appellants attack section 253-a of the Code of Criminal Procedure as an unconstitutional delegation of the legislative power to define and prescribe the conduct which will subject public officer and employees to disciplinary sanctions, including removal. They contend further that the delegation is totally standardless since the Grand Jury is given no guidance as to the meaning of the terms “ non-criminal misconduct, nonfeasance or neglect in office”. *210 Respondent counters by arguing that the Grand Jury can be instructed as to the meaning of such terms so that its members will not be applying their subjective, unexpressed moral judgments as to a public officer’s conduct in office. An examination of the area sought to be affected by the ‘1 reporting ’ ’ provision discloses rather clearly that this is not an area where the Legislature could reasonably be said to have found it desirable to leave the task of defining the subject of its legislation to its supposed delegate, the grand jury. “ Grand jurors are not selected for their skill in appraising efficiency in public office or delving into matters more appropriately reserved for executive or legislative action.” (Matter of Wood v. Hughes, supra, at p. 155.) Furthermore, the Legislature has long demonstrated both its willingness and ability to legislate extensively with regard to misconduct by public officers (see Penal Law of 1909, art. 170, §§ 1820-1879). Indeed the new Penal Law precisely defines “ official misconduct ” and directs its punishment as a crime, a class A misdemeanor (Penal Law, § 195.00). That section includes both the affirmative action on the part of a pubic officer which would constitute ‘ ‘ misconduct ’ ’ and the failure to act which would constitute ‘ ‘ nonfeasance or neglect” (the operative terms in the reporting provision). However, it is clear that that section of the Penal Law cannot be the basis for the standards and instruction which respondent contends are available since section 253-a expressly limits the reporting power to ‘ ‘ non-criminal misconduct, nonfeasance or neglect in office ”. It is, therefore, necessary to look elsewhere for the required standards by which the Grand Jury’s reporting power is to be governed if section 253-a is to be read as something more than a superfluous repetition in different words of the Grand Jury’s ordinary power to inquire and indict for crimes. The only possible source of such “standards ” is the attitude of the Grand Jury itself, its feelings of right and wrong, its inexpert opinion of inefficiency or proficiency in the conduct of public office. These manifestly are no standards at all, dependent as they are upon the diverse personalities and experiences of the individual grand jurors who may be called upon to participate in the issuance of such a report. Accordingly, it must be concluded that the. statute violates section 3 of article I of the Constitution since it clearly *211 constitutes an impermissible delegation of the legislative power vested exclusively in the Senate and the Assembly.
Accordingly, the order of the Appellate Division, Fourth Department, should be reversed and the matter remitted to the County Court, Erie County, with directions that the report of the Grand Jury be forever sealed.